UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DESIREE D.,

                                                     Plaintiff,

                                               v.

COMMISSIONER OF SOCIAL SECURITY,

                                               Defendant.
_____

                                               DECISION AND ORDER

                                               20-CV-6197L

Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

On June 20, 2016, plaintiff filed applications for a period of disability and disability insurance benefits, and for supplemental security income, alleging an inability to work since September 24, 2014. (Administrative Transcript, Dkt. #11 at 12). Her applications were initially denied. Plaintiff requested a hearing, which was held on November 16, 2018 before Administrative Law Judge ("ALJ") Connor O'Brien. The ALJ issued a decision on January 8, 2019, concluding that plaintiff was not disabled under the Social Security Act. (Dkt. #11 at 12-27). That decision became the final decision of the Commissioner when the Appeals Council denied review on January 30, 2020. (Dkt. #11 at 1-3). Plaintiff now appeals from that decision.

The plaintiff has moved for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c) and requests remand of the matter for the calculation and payment of benefits or in the alternative for further proceedings (Dkt. #14), and the Commissioner has cross moved (Dkt. #15) for judgment

on the pleadings. For the reasons set forth below, the plaintiff's motion is granted, the Commissioner's cross motion is denied, and the matter is remanded for further proceedings.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ summarized plaintiff's medical records, and concluded that plaintiff's severe impairments consisted of fibromyalgia, bilateral carpal tunnel syndrome status post-left carpal tunnel release surgery, degenerative disc disease with spondylosis, chronic low back pain with radiculopathy, post gastric sleeve weight loss, degenerative changes in the knees (worse on the right), status post corneal transplant with right eye vision loss, migraines, anxiety disorder, panic disorder, bipolar disorder, and schizoaffective disorder. (Dkt. #11 at 14).

Applying the special technique for mental impairments, the ALJ concluded that plaintiff has a mild limitation in understanding, remembering, or applying information, a moderate limitation in interacting with others, a moderate limitation in concentration, persistence and pace, and a moderate limitation in adapting or managing herself. (Dkt. #11 at 16-17).

The ALJ concluded that plaintiff, 28 years old on the alleged onset date, has the residual functional capacity ("RFC") to perform light work, with the following limitations: she can lift and carry up to 20 pounds occasionally and 10 pounds frequently, and can sit for up to six hours and stand or walk for up to four hours in an 8-hour workday. She requires the ability to change position

for up to 5 minutes every hour. She cannot climb ladders, ropes or scaffolds, or balance on narrow, slippery, or moving surfaces. She cannot kneel or crawl, but may occasionally stoop, crouch and climb stairs or ramps. She can tolerate no more than occasional exposure to bright light (defined as "brighter than office light"), and moderate noise, as defined by the DOT. She can occasionally reach, handle, and finger with her left dominant hand. She can occasionally employ depth perception and peripheral vision to her right (by turning her head). She must avoid hazards, including unprotected heights and open waters. She is limited to simple, unskilled work, can adjust to occasional changes in the work setting, and can make simple work-related decisions. She can interact with the public occasionally, but cannot perform tandem or teamwork. She can fulfill daily quotas or expectations, but cannot maintain a fast-paced, automated, production line pace. Additionally, she requires three short, less-than-five-minute breaks in addition to regularly scheduled breaks. (Dkt. #11 at 18).

When presented with this RFC at the hearing, vocational expert Sakinah Malik testified that an individual with these limitations could perform the positions of fruit distributor, surveillance systems monitor, and bakery worker. (Dkt. #11 at 26). The ALJ accordingly found plaintiff not disabled.

## I.     Medical Opinions of Record

Pursuant to the applicable regulations, the opinion of a treating physician is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir.2003); *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir.1999). In determining what weight to give a treating physician's opinion, the ALJ must consider: (1) the length, nature and extent of the treatment relationship; (2) the frequency of examination; (3) the evidence presented to support the treating physician's

opinion; (4) whether the opinion is consistent with the record as whole; and (5) whether the opinion is offered by a specialist. 20 C.F.R. §§ 404.1527(d); 416.927(d).

When controlling weight is not given to a treating physician's opinion, the ALJ must explain his or her reasons for the weight that is assigned. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000); *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.1999) ("[f]ailure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand")(internal quotations omitted). In so doing, "the ALJ cannot arbitrarily substitute his [or her] own judgment for competent medical opinion," nor may the ALJ "set his [or her] own expertise against that of a physician who [submitted an opinion or] testified." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir.1998).

With respect to plaintiff's mental RFC, the record contained: a November 16, 2018 mental RFC opinion by plaintiff's treating psychiatrist, Dr. Tulio Ortega (Dkt. #11 at 779-81); seven mental RFC opinions from 2015 through 2018 from plaintiff's treating social worker, Barbara Burke (Dkt. #11 at 667-70, 671-74, 510-12, 513-16, 675-78, 679-82, 706-708); an August 5, 2016 mental RFC opinion by consulting psychologist Dr. Kristina Luna (Dkt. #11 at 491-95); and an August 15, 2016 mental RFC opinion by non-examining state agency medical consultant Dr. E. Kamin (Dkt. #11 at 115).

The opinion evidence concerning plaintiff's physical RFC included the March 20, 2014, March 17, 2015, March 14, 2017, March 16, 2018, and September 27, 2018 opinions of plaintiff's treating family medicine specialist, Dr. Rosario Soriano-Turque (Dkt. # 11 at 683-86, 687-90, 695-99, 700-703, 704-705); the March 17, 2016 opinion of treating physician's assistant Jacqueline Malay (Dkt. #11 at 691-94); the July 21, 2016 opinion of treating orthopedist Dr. Karl

Michalko (Dkt. #11 at 316-21); and the August 5, 2016 opinion of consulting internist Dr. Dominic Cirillo (Dkt. #11 at 497-506).

In weighing this evidence, the ALJ gave "partial weight" to the opinions of treating psychiatrist Dr. Ortega and treating therapist (and non-acceptable source) Ms. Burke, and "more weight" to the opinions of consulting psychologist Dr. Luna and non-examining physician Dr. Kamin. In so doing, the ALJ reasoned that the marked limitations opined by plaintiff's treating sources (including a host of "extreme" or "serious" limitations in social interaction, concentration, and self-management) were inconsistent with plaintiff's "conservative" treatment, her favorable response to treatment when compliant, and an absence of documented intellectual deficits, memory issues, concentration problems, or psychiatric hospitalizations. (Dkt. #11 at 22).

Initially, the ALJ's discussion did not overtly apply the treating physician rule, and made little acknowledgement of plaintiff's treatment history with psychiatrist Dr. Ortega and therapist Ms. Burke, which was extensive: plaintiff treated with Dr. Ortega nearly twenty times between 2013 and 2018, undergoing mental status examinations and medication management, and saw Ms. Burke more than fifty-five times during the same period.

Furthermore, the ALJ's rejection of Dr. Ortega's and Ms. Burke's opinions as inconsistent with the objective findings in plaintiff's treatment notes focuses on an alleged absence of noted cognitive deficits or diminished concentration, but does not cite to any notes in particular. While a review of the record indicates the ALJ was correct with respect to some of plaintiff's progress notes, others testify to a waxing and waning of symptoms and a wide range of objective findings, from "improving" and "normal," to "impaired" with descriptions of angry outbursts, anxiety attacks, paranoia, poor judgment, inability to focus, and delusions or hallucinations. The ALJ's conclusory finding that Dr. Ortega's and Ms. Burke's opinions were not supported by plaintiff's

5

psychiatric treatment history appears to overlook periods during which plaintiff's functioning was noted to be impaired. It is well-established that an "ALJ cannot simply pick out 'a few isolated instances of improvement over a period of months or years and []treat them as a basis for concluding a claimant is capable of working.'" *Kelly M. v. Commissioner*, 2020 U.S. Dist. LEXIS 219405 at *14 (W.D.N.Y. 2020)(quoting *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019)). *See also Molina v. Saul*, 2019 U.S. Dist. LEXIS 176606 at *103-*104 (S.D.N.Y. 2019)("the ALJ should not assume that the claimant lacks a disabling condition merely because certain mental status examinations reflect no abnormality").

Furthermore, the opinions of consulting psychologist Dr. Luna and reviewing physician Dr. Kamin do not furnish "good reasons" for discounting the limitations opined by plaintiff's long-term mental health care providers. The Second Circuit has frequently "cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination," *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013), a concern that is "even more pronounced in the context of mental illness where . . . a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Estrella*, 925 F.3d 90, 98.

Concerning plaintiff's physical RFC, the ALJ assigned "limited" weight to the assessments of plaintiff's treating family physician Dr. Soriano-Turque and treating physician's assistant (and non-acceptable source) Ms. Malay, "limited" weight to the opinion of treating orthopedist Dr. Michalko, and "more weight" to the assessment of consulting internist Dr. Cirillo. (Dkt. #11 at 24). Specifically, the ALJ found that the extensive sitting, standing, walking, lifting, carrying, pushing, pulling and bending limitations indicated by Dr. Soriano-Turque (limiting plaintiff to no more than 1-2 hours per day for most exertional activities, with the inability to lift ten pounds, twist, stoop, and crouch, and a likelihood of missing more than four days of work per month) and

Ms. Malay (who indicated that plaintiff could sit for up to 4 hours in a typical workday) were inconsistent with objective findings showing normal gait and no significant extremity strength or sensation deficits. *Id*. The ALJ found Dr. Cirillo's opinion (which specified no more than moderate exertional and postural limitations) to be more persuasive, based on the alleged consistency of his objective findings with plaintiff's treatment records.

Initially, the ALJ's finding that plaintiff's treatment records supported Dr. Cirillo's opinion, but not the more restrictive opinions of plaintiff's treating physicians, relied on a selective review of the record. While objective examination findings did not always note abnormalities or objectively measure plaintiff's strength or flexibility, they frequently noted chronic back pain or tenderness in the lumbar spine and knees, joint pain in the limbs and hands, poor balance, leg length discrepancy, pain with squatting, bending or rotating, leg stiffness, and generalized fibromyalgia-related body pain. *See e.g.*, Dkt. #11 at 580, 594, 600-601, 606, 614, 616. The ALJ did not discuss these findings. Furthermore, the ALJ's RFC determination as to plaintiff's specific exertional capacity (e.g., ability to lift and carry 10 or more pounds, ability to sit/stand/walk for particular numbers of hours) lacks substantial support in the record, to the extent that these abilities were not addressed in quantifiable numeric terms by either of the medical opinions on which the ALJ substantially relied.

"While the ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,' [the ALJ] cannot simply selectively choose evidence in the record that supports his [or her] conclusions." *Gecevic v. Secretary of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y.1995) (*quoting Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir.1983)). By rejecting the opinions of every treating physician (and every non-physician treating source) in the record on the basis of alleged inconsistencies with selected treatment notes, and by formulating a highly-specific

RFC that contained exertional limitations not addressed by any of the credited medical opinions, I find that the ALJ improperly substituted her "own expertise or view of the medical proof [in place of] any competent medical opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

Because the ALJ failed to apply the requisite standards in considering the medical opinions of record, and because the record does not necessarily provide "persuasive proof of disability," remand for further proceedings – and not for the calculation and payment of benefits – is the appropriate remedy. *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).

## CONCLUSION

For the forgoing reasons, I find that the ALJ's decision was not supported by substantial evidence, and was the product of legal error. The plaintiff's motion for judgment on the pleadings (Dkt. #14) is granted, the Commissioner's cross motion for judgment on the pleadings (Dkt. #15) is denied, and this matter is remanded for further proceedings. On remand, the ALJ should reassess the evidence of record, contacting medical sources for clarification or soliciting additional consulting opinions where appropriate, and should render a new decision which provides a detailed explanation of the evidence of record supporting the ALJ's findings, identifies the weight given to each medical opinion of record, applies the treating physician rule, and explains the reasons that opined limitations are adopted or rejected.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       May 4, 2021.